# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RECEIVED
PRO SE OFFICE

2019 JUL 30  AM 6:12

S.D. OF N.Y.

D'Juan Collins B&C #349-18-07053
_____

Write the full name of each plaintiff.

19 CV 7156
(Include case number if one has been assigned)

42 U.S.C. §1983

-against-

New York City, NYC Police Officer-

Lorraine Ramos #20126; NYC Police Officer-

Keith Rodriguez #21201 ; NY County,

NY County A.D.A.. Mark Murphy (see attached)

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

# COMPLAINT

Do you want a jury trial?
☒ Yes   ☐ No


19 CV 7156

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants), 28 USC §1367(a)

[X]  Violation of my federal constitutional rights

[X]  Other:    **violation of state law claims (statutory); 28 USC §1367(a)**

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

D'Juan                    Elihu                    Collins
First Name                Middle Initial           Last Name

N/A
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

N/A
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Otis Bantum Correctional Center
Current Place of Detention

1600 Hazen St.
Institutional Address

East Elmhurst                New York                11370
County, City                 State                   Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

[X]  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other:

## IV. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

Scott                           Stringer      (City of New York; County)
First Name                      Last Name

New York City Comptroller
Current Job Title (or other identifying information)

1 Centre St., Rm. 1225
Current Work Address (or other address where defendant may be served)

New York                        New York              10007
County, City                    State                 Zip Code

Defendant 2:

Lorraine                        Ramos
First Name                      Last Name

NYC Police Officer Shield #20126
Current Job Title (or other identifying information)

34 Precint, 4295 Broadway, N.Y., N.Y.
Current Work Address (or other address where defendant may be served)

N.Y.                            New York
County, City                    State                 Zip Code

Defendant 3:

Keith                           Rodriguez
First Name                      Last Name

NYC Police Officer Shield #
Current Job Title (or other identifying information)

34th Precint, 4295 Broadway
Current Work Address (or other address where defendant may be served)

N.Y.                            New York
County, City                    State                 Zip Code

## II. PARTIES cont'd.

**Defendant 4**

Mark       Murphy
First Name   Last Name

N.Y. County Assistant District Attorney
Current Job Title (or other identifying info.)

1 Hogan Place
Current Work Address (or other address...)

New York      N.Y.      10013
County, City     State     Zip Code

**Defendant: 5**

Melissa      Jimenez-De Armas
First Name   Last Name

Official Court Reporter
Current Job Title (or other identifying info.)

100 Centre St.
Current Work Address (or other identifying info.)

New York      N.Y.      10013
County, City     State     Zip Code

**Defendant: 6**

Yvonne      Nix, Esq.
First Name   Last Name

Legal Aid Society-Attorney
Current Job Title (or other identifying info.)

49 Thomas St.
Current Work Address (or other address...)

New York      N.Y.      10013
County, City     State     Zip Code

Defendant: 7       Cyrus                    Vance Jr.  (DELETED) D.C.
_____
                   First Name                Last Name

New York County District Attorney
_____
Current Job Title (or other identifying information)

1 Hogan Place
_____
Current Work Address (or other address where defendant may be served)

New York                    N.Y.               10013
_____
County, City                State              Zip Code

# V. STATEMENT OF CLAIM

Place(s) of occurrence:     125 Post Ave.,, Apt. #1-C, N.Y., N.Y 10034
_____

Date(s) of occurrence:      September 22, 2018
_____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

1)     On September 22, 2018, around 12:20am at the above location I was present with my fiancee, Melinda Owens inside our room in a shared apartment with two other roommates.

2)     On the above date and approximate time we were having a couple's quarrel where drinking had been involved.

3)     During our quarrel my fiancee had assaulted me with her nails in my face and arms.

4.)    I restrained her arms at her side to stop her from scratching my skin as she was drawing blood from my face, arms and chest.

5)     While restraining her and her tring to get out of my bear hug we fell accidentally and she hit the back of her head on the floor.

6)     During this time, there was a knock at the door and it was announced that it was the police.

7)     Once I saw the blood on her hand (rt) I was saying "baby I'm

Page 4

so sorry, are you ok?"

8)     Melinda then got up to go answer the door with me standing behind her.

9)     She opened the door with her bloody hand, a male police officer asked Melinda was she ok?  She said"yes, I just fell."

10)     It is believed that the male police officer is Police Officer, Keith Rodriguez shield #21201.  This belief is based upon the fact that he was the only officer to step across the threshold of the apartment and upon the grand jury testimony that he went inside her bedroom, (see, grand jury transcripts pgs. 1-6, marked, Exhibit: A).

11)     After Melinda Owens stated "yes, I just fell", P.O. Rodriguez escorted her to her room.  With just the two of them alone and within seconds, P.O. Rodriguez came out into the corridor and told the awaiting officers to "cuff em!"

12)     Prior to the declaratory statement by P.O. Rodriguez, Police Officer, Lorraine Ramos had told me or suggested, "why don't you step out here."  Which I did and was arrested by Police Officer, Lorraine Ramos, shield #20126.

13)     At no time during this process did Police Officer, Ramos communicate to or with Melinda Owens about the alleged incident.

14)     P.O. Ramos arrested me outside apt. #1-C without incident escorted me downstairs and into her awaiting police crusier.

15)   It is believed that I was being fingerprinted at approximately 1:06am on September 22, 2018, this belief is based upon the fingerprint response sheet, (see, fingerprint response sheet, marked, Exhibit: B).

## FELONY ARRAIGNMENT

16)   On September 22, 2018 after being processed at the 34th Pct, I was subsequently transferred to central booking in New York County by Police Officer, Ramos.

17)   On arraignment of the Felony Complaint, there was an original felony complaint accusing me of inter alia, repeatedly kicking Ms. Owens in the face (paraphrased).

18)   My assigned counsel during the felony arraignment was and continues to be Ms. Yvonne Nix, Esq. of the Legal Aid Society, (see, Notice of Appearance, dated 10-25-18, marked Exhibit: C).

19)   I appeared before Judge, Joanne Watters in Part AR3 under docket #2018NY038712 on September 22, 2018 (upon the criminal record)

20)   It is believed that the Assistant District Attorney-Mark Murphy of the New York County District Attorney's Office was in appearance on the felony complaint arraignment.

This belief is based upon my personal observance of the A.D.A. as a male caucasian with no distinctive accent and upon the fact that A.D.A. Mark Murphy's name appears on the felony complaint.

21)    It is further believed that A.D.A. Mark Murphy was in appearance on the felony arraignment based upon the fact that the felony arraignment transcripts is devoid of Judge, J. Watters' directive to A.D.A. Mark Murphy that "I want the signed deposition!"

22)    This was stated because I was charged with a misdemeanor assault in the third degree, (see, Felony Complaint[1] marked, Exhibit: D)

23)    I had informed Ms. Y. Nix, Esq. that"I didn't kick my baby in her face."  I told Ms. Nix, Esq. that I'd like to have a copy of this felony complaint accusing me of "repeatedly kicking Ms. Owens in her face."

24)    Ms. Y. Nix stated, "I will get you a copy."

### C.P.L. §180.80 Day

25)    On or about September 27, 2018 during a bullpen visit, I asked Ms. Y. Nix, Esq. again for a copy of the felony complaint alleging that I repeatedly kicked Ms. Owens in her face, inter alia.

26)    Ms. Y. Nix Esq. response to me was that, "I don't have a copy, this is the only one I have," (referring to her copy in her file folder).  She just let me re-read her copy.

27)    During our bull-pen visit on my 180.80 day, Ms. Y. Nix, Esq., assured me that she could get me a program if I waived my C.P.L. §180.80 rights, to which I did waive my right to be released upon my own recognizance, (see, Record of Court Action, dated, 9-27-18 marked, Exhibit: E).

---

1.   The current felony complaint is not the original and therefore is a fabrication.  The original has been erased from the record.

28)    On 9-22-18 despite my counsel's assurance that she could get me a program if I waived my right; I never got a program and have been detained ever since.

29)    On or about 10-11-18 in Pt. 51 on arraignment on the indictment, I was indicted on violating P.L. §§121.12 (strangulation in the 2nd Degree), 120.00(1) (Assault in the 3rd Degree), (see, Indictment #03510/18 marked, Exhibit: F).

30)    On or about 10-25-18 during an attorney-client visit at Manhattan Detention Center, Ms. Y. Nix, Esq. showed me a different felony complaint then the one I originally saw and had been asking for.

31)    When I asked Ms. Y. Nix, Esq. what happened to the other felony complaint. She responded in an agressive manner, "What other felony complaint! This is the only felony complaint!"

32)    Feeling frustrated, I just looked at her like she was crazy.

33)    I then went along with the charade and read this new felony complaint that stated inter alia, "the defendant punch her in the head and kick her..."; instead of the original version of me repeatedly kicking her in the face, (see, new    felony complaint, marked, Exhibit: D).

34)    As I perused through this new felony complaint, I looked at the signature and realized that the signature is that of my arresting officer, P.O. Lorraine Ramos, shield #20126, (see, Exhibit: D).

35)   In the factual basis of the felony complaint, P.O. L. Ramos states under oath, "I am informed by an individual known to the District Attorney's Office, that she observed the defendant punch her in the head and kick her, causing bleeding to her head and substantial pain. I am furhter informed that she observed the defendant place both hands around her neck, while she was on the ground, and apply pressure to her neck, causing her to lose consciousness, (see, Exhibit: D ).

36)   After reading the new felony complaint, I stated to Ms. Y. Nix, Esq, that the factual basis is vague as it's not clear who the she is.

37)   Ms. Nix told me "that's how they (D.A.) do it". I then question her on who the she was in the statement. She stated, she believes that that's Mary (Melinda's roommate) in the statement; she didn't look sure though.

38)   Around January 5, 2019 after motions had been entered, I asked my attorney about that program she had assured me she could get when I waived my 180.80 rights. She told me "to start looking."

39.   Filled with relief and feeling optimistic I began networking in my current detention center for a program.

40)   Within a week I came across a program called Fortune Society and after screening I was given a reasonable assurance that they would accept me in their program. I then gave them my attorney's contact and email information to Mr. Anthony L. Simpson-Medical CaseManager (email: ASimpson@FortuneSociety.org).

41)   After some time of going back-n-forth a connection was made between the two entities and I was given a social worker from the Legal Aid Society to interview me.  Her name is Ms. Deborah Pollack.

42)   Ms. Deborah Pollack performed 2  interviews with me asking me question about my childhood, my adolescent and adult years.

43)   After interviewing me and me naming some referral resources of people for whom I have either worked for, friends family and pastor, she began interviewing them as well.

44)   The court and the District Attorney's Office was well aware that I was requesting a program and that a social worker had been assigned for that purpose because when needed extra time for the social worker to conclude their findings, the A.D.A. didn't object to any adjournments, for that purpose.

45)   The court had given us to Februay 14, 2019 to conclude the investigation.  This was being handled in Pt. 51, with Judge Michael J. Obus presiding.

46)   On the return of February 14, 2019 the social work interviews was concluded and a P&P was done, (P&P upon the record).

47)   Judge, M. Obus then asked the A.D.A. that was present if they knew if they were prepared to respond to the P&P report. The A.D.A. present for that day said no, they need time.

48)   Judge, M. Obus gave them two weeks and to return on the 28th of February, 2019 for the A.D.A.'s response.

49)   Feeling hopeful at this point, I gave all my belongings away (food, clothes, books, & magazines) and I carried the rest

of my belongings in two net-bags to court on or about
February 28, 2019 for what I thought was going to be a
disposition to the Fortune Society program.

50)   This optimism was further fostered by the fact that a
court advocate from Fortune Society by the name of
Carla Obrien (email:cobrien@fortunesociety.org) had advocated
that I get their program, (upon the record: 2-14-18 or there-
about).

51)0   On the above date, the court inquired on what was the
People's position on the program for Fortune Society.  The
People responded in an oral but adamant response, "No! inter
alia."

52)   With feelings of despair, hurt, loss of hope, frustration
with all the obvious deceit, I cried.

53)   Feeling like Ms. Y. Nix, Esq., was in concert with the
A.D.A. Mark Murphy, I began doing my own limited investigation
into trying to obtain the court records.

54)   With the assistance of my friend Dan Tamayo, he was able
to procure some court records.

**Waiver of C.P.L. $30.30 without my knowledge**

55)   Upon receiving some court records from Dan Tamayo in
the mailroom here at O.B.C.C., I signed for my mail in a
logbook

56)   Upon perusing the record of court action, I noticed that
in addition to me waiving my C.P.L. §180.80 rights upon counsel's
assurance of a program, I also noticed that counsel waived my
C.P.L. §30.30 rights and to this date has failed to inform me

that she waived my statutory speedy trial right[2] (see, Exhibit: E).

57)    As a direct result of Ms. Y. Nix, Esq. waiving my statutory speedy trial right, she has worked to further deprive me of my liberty because I currently have the time in for at least to be released on my own recognizance; it is futile at this point to bring a claim pursuant to C.P.L. §30.30 et seq. due to being bound to counsel's decision.

### Fabricated Felony arraignment transcripts

58)    In an effort to be informed about this case, I hired an independent contractor (paralegal) named Gregory Rheubottom to obtain a copy of the transcripts of the felony arraignment, which he obtained on or about 10-16-18, (see, transcripts of felony arraignment marked, Exhibit: F).

59)    Upon perusing the transcripts of the felony arraignment, I noticed that there were significant differences and/or omissions from the actual/original record, for instance:

*       There was nothing in the record indicating that I repeatedly kicked Melinda Owens in her face (upon the original felony complaint);

*       The record is devoid of the directive by Judge, J. Watters to the A.D.A. to have the supporting deposition signed (see, Invg. Amari Williams' notes on talking about a supporting deposition to Melinda Owens marked, Exhibit: G)[3]

---

2.      During a bull-pen visit I had asked Ms. Yvonne Nix, Esq, if she had waived my 30.30 rights, to which she nodded her head No.

3.      Investigator, Amari Williams is an investigator with The Legal Aid Society.

\*     According to page 5 of the transcript, Y. Nix, Esq.
stated, "I would ask the court to set a more reasonable bail
and I would point out the injuries alleged here, it appears
that after the complaining witness received (emphasis added)
medical treatment at the hospital, the injuries alleged are
really misdemeanor injuries, Assault 3 injuries."

60)    It is believed that the above statements were part of a
bail reduction hearing that I had asked counsel to make on my
behalf when my friends, James Stephens and Pastor, John Jennings
showed up at my oral bail application in Judge, Michael Obus
court on or about January 3, 2019 and therefore, couldn't be
part of the felony arraignment transcript occurring on 9-22-18.

### Fabricated body-cam footage

61)    On or about 1-3-19 the People in response to a discovery
request and Decision & Order from Judge, Michael J. Obus dated,
January 3, 2019 turned over their discovery material, inclusive
with that discovery were 2 disc inter alia, (see, Decision &
Order, dated Jan. 3, 2019 marked, Exhibit: H).

62)    After some time had gone by I had requested the discovery
material that was turned over to defense by the prosecution,
from my attorney, (911 call, medical records, body-cam footage etc.),
in a letter dated March 07, 2019 to be given to me (see, letter
dated, 3-07-19 marked, Exhibit: I).

63)    During a bull-pen visit on 3-20-19 in TAP B, that was being
held in TAP A, I asked counsel, "on the day the People turned
over discovery material, there were 2 discs in a plastic bag with
other related documents.  What was on those 2 discs?"

64)    Ms. Y. Nix, Esq. in response to my question, rolled her eyes upwards to the ceiling and after some hesitation stated, (passive tone) "I don't remember."

65)    On 10-25-18 the People filed a Certificate of Readiness, yet despite the filing of readiness, the People announced on the record on 3-20-19 that they were not ready for trial (see, Certificate of Readiness marked, Exhibit: J).

66)    The case was adjourned to 5-1-19 as the People announced on the record that they were not ready for trial.  Despite the unreadiness of the People, counsel consented to the adjournment unneccessarily and without any legal justification (strategy) or otherwise.

67)    On 5-1-19 in Pt. TAP B, the People announced again that they were not ready for trial. Still again, counsel without justification consented to an adjournment of the People's case.

68)    Feelin betrayed, disgruntled and aggravated that case seems to remain in legal limbo due to counsel's numerous consensual adjournments, I wrote counsel a letter dated, 5-16-19 addressing my concerns (see, letter dated, 5-16-19 marked, Exhibit: K)

69)    Until recently as May 5, 19, it was believed that the she in the new felony complaint was Mary (Melinda's roommate) as that belief was based upon counsel's word.  On the above date, I called Ms. Y. Nix, Esq., from a prison phone and asked her simply who the she was in the new felony complaint.

70)    Counsel represented to me that the she in the new felony complaint was indeed Ms. Melinda Owens, (see, Exhibit: D).

71)     Based upon the representation by counsel, Ms. Y. Nix, Esq.,
that the she in the new felony complaint bearing P.O. L. Ramos'
signature; plaintiff now states that the new felony complaint is
fabricated as at no time did P.O. L. Ramos communicate with
Ms. Melinda Owens prior to my arrest nor did she communicate with
Melinda Owens soon after my arrest.

72)     On 6-11-19 the People announced that they were not ready
for trial again and also spoke for my attorney on consent for
an adjournment, as counsel acquiesced to the adjournment and
acceded to the adjournment by remaining mute on the People's
position.

73)     It is believed that defense counsel, Ms. Y. Nix, Esq.,
acquiesced to the adjournment in response to my 5-16-19 letter,
where I indicated that counsel should object to any adjournments
or just remain mute if the People request an adjournment,
(see, Exhibit: J).

74)     It appears that counse for defense disparaged my concerns,
communication of my privileged correspondence to the People, which
the People spoke up for Ms. Y. Nix, Esq., which could be considered
to be acting in concert with one another, (see, transcripts of
6-11-19 upon the record).

75)     On the above date, during a bull-pen visit in Pt. TAP B,
Ms. Y. Nix, Esq. informed me that she mailed out the body-cam
footage on or about 5-24-19.

76)    Upon checking with NYCDOC's Law Library Coordinator, Ernest O. Omorogbe, I was informed that he did indeed receive a copy of some discovery related material, for which I was able to review the body-cam footage on about 6-24-19.

77)    Upon review of the body-cam footages (multiples cameras) I discovered that the events of 9-22-18 were not correct but appeared to have been altered, fabricated, superimposed, re-digitized, rotoscoped and otherwise an inaccurate account of what actually happened on the night leading up to my arrest.

78)    After reviewing the body-cam footages (DVD) I notified counsel, Y. Nix, Esq., of the descrepancies of the body-cam footages via voicemail with a request for a tele-conference.

79)    On June 26, 2019 at approximately 1:25pm, I was summoned to the Legal Aid Office here at O.B.C.C., where a Ms. WestMoreland called Ms. Nix, Esq.

80)    During the attorney-client communication counsel informed me that the testimony of Melinda Owens during the grand jury doesn't comport with the video-surveillance outside of 125 Post Ave (NYPD surveillance camera).

81)    During the grand jury testimony of Ms. Melinda Owens, Ms. Owens testified that plaintiff inter alia that started punching her with a closed fist in her face, (see, pages 11-12 of Exhibit: A).

82)    The video-surveillance clearly shows that no such account of plaintiff punching Ms. Owens in her face, nor was there other guys out there showing me questioning "who she was sleeping with and is it this one or that one..." (pg.12 of Exhibit:A).

83)   It is believed that the prosecution's witness, Melinda Owens perjured herself during the grand jury on a material matter, that was known to be false this belief is based upon the aforesaid.

84)   It is believed that the A.D.A., Mark Murphy and assigns knew that the grand jury testimony of Melinda Owens would be perjured testimony and suborned perjured testimony, instructed, demanded, suggested or otherwise induced Melinda Owens to committ perjury this belief is based upon the preliminary investigation of the prosecution's case prior to the grand jury proceeding.

## CAUSE OF ACTIONS

For plaintiff's cause of action(s) against Defendants N.Y.C. Police Officer, Lorraine Ramos, N.Y.C. Police Officer, Keith Rodriquez, A.D.A., Mark Murphy and assigns, Court Reporter, Melissa Jiminez and Yvonne Nix, Esq plaintiff states:

1)   By this reference, Plaintiff reiterates, realleges and incorporates each and every allegation and averment contained in paragraphs 1 through 84 of this complaint as though fully set forth herein.

2)   Defendants N.Y.C. Police Officer, Lorraine Ramos, N.Y.C. Police Officer, Keith Rodriguez, A.D.A., Mark Murphy and assigns, Court Reporter-Melissa Jiminez-De Armas, and Yvonne Nix, Esq., acting in their individual capacities and under color of law, having conspired together and with others reached a mutual understanding and acted to undertake a course of conduct

that violated plaintiff's civil rights and my First
Amendment (access to courts), Sixth Amendment (assistance of
counsel) and Fourteenth Amendment (due process) of the
United States Constitution and plaintiff's state law claims
under the N.Y. Judiciary Law §487(1); N.Y. C.P.L.§§30.30 et seq.;
180.80

## FIRST CAUSE OF ACTION

### CONSPIRATOR-N.Y.C. POLICE OFFICER, LORRAINE RAMOS

Fabricated evidence (i.e., felony complaint) by knowing
that she never spoke to or with the alleged complainant, Melinda
Owens either prior to or after the arrest but filed or caused to
have filed the fabricated felony complaint that was sworn to
under oath in a criminal proceeding, which ultimately that false
felony complaint was used in the grand jury where plaintiff was
indicted upon the false information and plaintiff deprived of my
liberty based upon fabricated evidence as plaintiff has a right
under due process not to be deprived of my liberty based upon
fabricated evidence.

## SECOND CAUSE OF ACTION

### CONSPIRATOR-N.Y.C. POLICE OFFICER, KEITH RODGRIGUEZ

Failed to intervene when having an affirmative duty to act,
when he knew or reasonably should've known that P.O. L. Ramos was
asserting in her felony complaint that she personally was informed
by the alleged complainant, Melinda Owens of the factual allegations,
and that he knew that, that assertion was false and he failed to
prevent that falsity from being asserted, when he knew or reasonably
should've known that the felony complaint would be used in the future

proceeding resulting in a deprivation of plaintiff's liberty as plaintiff has a right not to be deprived of my liberty based upon fabricated evidence.

### THIRD CAUSE OF ACTION
### CO-CONSPIRATOR-ASSISTANT DISTRICT ATTORNEY, MARK MURPHY

A.D.A., Mark Murphy knew or reasonably should've known that the felony complaint subscribed under oath by P.O. L. Ramos was false, used the false felony complaint in a criminal proceeding during his investigative role, which he reasonably foresaw that it would be later used as evidence in a grand jury proceeding, which resulted in plaintiff being indicted, resulting in a deprivation of plaintiff's liberty where plaintiff has a right not to be deprived of my liberty based upon false evidence and plaintiff continues to be restrained in my liberty based upon the indictment.

### FOURTH CAUSE OF ACTION
### CO-CONSPIRATOR-COURT REPORTER MELISSA JIMINEZ DE-ARMAS

Melissa Jiminez-DeArmas intentionally and deliberately fabricated the felony arraignment transcripts by omitting inter alia, portions of the original record that had stated, "I repeat-edly kick Ms. Owens in her face..." in an attempt to cover-up any reference to the original felony complaint and inserting reference to the new felony complaint in order to strengthen the prosecution's theory of an otherwise weak case thereby depriving plaintiff of a fair trial where it is foreseeable that this new

theory of the prosecution's case contained in the fabricated
felony complaint will be advanced at future proceedings
(i.e., pre-trial hearings, suppression and Huntley) and trial as
plaintiff has also a liberty interest not to be deprived of my
liberty based upon fabricated evidence.

## FIFTH CAUSE OF ACTION

## CO-CONSPIRATOR- DISTRICT ATTORNEY, MARK MURPHY

A.D.A., Mark Murphy fabricated or cause to have fabricated
the police worn body-cam footages of the N.Y.C. Police Officers,
which was forwarded to plaintiff by co-conspirator-Yvonne Nix, Esq.,
by conducting the fabrication of the body-cam footages himself or
directing a third-party to fabricate, alter, superimpose, rotoscope
or re-digitize by whatever method, the actual and original account
of events of 9-22-18 leading up to plaintiff's arrest and filed in
the plaintiff's criminal case or with the intention of filing the
fabricated body-cam footages in future proceedings (i.e., suppression
hearings and trial) and that the filing or future filing of the
fabricated body-cam footages deprives plaintiff of my right not to
be deprived of my liberty based upon false evidence and the right
to a fair trial where it is reasonably foreseeable that such
evidence would be used at future proceedings and taint the very
proceedings meant to provide plaintiff with procedural due process.

## SIXTH CAUSE OF ACTION

## CO-CONSPIRATOR-YVONNE NIX, ESQ

### FRAUDULENT CONCEALMENT

Due to the attorney-client relationship, co-conspirator had a legal duty to inform me that she waived my C.P.L. §30.30.(1),(a); (2),(a) rights, she failed to inform me of this relevant and material fact and as a result, plaintiff has been injured in that I've been precluded from raising this defensive claim of my statutory speedy trial right, which further worked to deny plaintiff access to courts on this issue as I'm bound my her decision which further worked to restrain me in my liberty as I would've elected to exert my statutory speedy trial claim. Failure of co-conspirator-Yvonne Nix, Esq. to inform me of her waiver ultimately damaged the trust in the attorney-client relationship in violation of my First and Sixth Amendment of the United States Constitution

### DECEIT

Co-Conspirator-Yvonne Nix, Esq. deceived plaintiff into waiving my statutory C.P.L. §180.80 right to be released upon my own recognizance based upon an undisposed felony complaint by assuring plaintiff that she could get me a program; it never happened.  Based upon the attorney-client relationship plaintiff relied upon her assurance to plaintiff's detriment as plaintiff is still being restrained of my liberty which plaintiff would have elected to have been released if it wasn't for the deceit of assurance from co-conspirator-Yvonne Nix, Esq.

## COLLUSION

Co-Conspirator-Yvonne Nix, Esq entered into an agreement whether explicitly or implicitly with certain state actors (to wit; A.D.A., Mark Murphy) to deprive plaintiff of my civil rights and my First, Sixth and Fourteenth Amendment of the United States Constitution and state law claims pursuant to N.Y. C.P.L. §§30.30 et seq; 180.80 and that it was the intention to so participate in the furtherance of a plan or purpose to work with Co-Conspirator-A.D.A., Mark Murphy and others to achieve an unlawful purpose thereby causing legal and emotional injuries, economic loss and deprivation of plaintiff's liberty to wit:

a)    deceiving plaintiff into waiving my statutory right to be released upon my own recognizance pursuant to C.P.L. §180.80;

b)    waiving my statutory speedy trial pursuant to C.P.L. §30.30 (1),(a);(2),(a) without my knowledge thereby precluding plaintiff from raising a legal claim, which worked to deny plaintiff's right to access to courts for redress of grievance;

c)    consented to unlimited adjournments when the prosecution was not ready for trial, which worked to allow the prosecution to manufacture false evidence and/or do damage control in hopes of strengthening the prosecution's weak case for use in the criminal case;

d)    consenting to unlimited adjournments when the prosecution when the prosecution have been stating that they were not ready for trial, causing plaintiff to languish in jail, using the adjournments as a means to garner a plea bargain from this plaintiff (e.g., time served on the misdemeanor assault in the third degree) as plaintiff has approxiamately 9 mos. and 25 days from the next court date of July 17, 2019

Based upon the aforesaid, co-conspirator-Yvonne Nix, Esq violated N.Y. Judiciary Law §487(1) which caused a denial of plaintiff's right to access to courts and procedural due process and to have the assistance of council for my defense, in violation of the First, Sixth and Fourteenth Amendment of the United States Constitution.

### SEVENTH CAUSE OF ACTION
### INEFFECTIVE ASSISTANCE OF COUNSEL
### 42 U.S.C. § 1983
### DECEIT

Co-Conspirator-Yvonne Nix's Esq. performance fell below the federal standard of effective assistance of counsel and that but for counsel's errors, the result of the proceedings thus far would have been different; those errors consist of:

Co-Conspirator-Yvonne Nix, Esq. deceived this plaintiff into waiving my statutory C.P.L. §180.80 right to be released upon my own recognizance based upon an undisposed felony complaint by assuring this plainttiff that she could get me a program; it never happened.

Based upon the attorney-client relationship, plaintiff relied upon her assurance to plaintiff's detriment as plaintiff is still being restrained of my liberty some nine months later which plaintiff would've elected to have been released, if it wasn't for the deceit of co-conspirator-Yvonne Nix's Esq. assurance.

## FRAUDULENT CONCEALMENT

Due to the attorney-client relationship, co-conspirator had a legal duty to inform me that she waived my C.P.L. §30.30 et seq. rights and she failed to inform me of this relevant and material fact and as a proximate cause of co-conspirator-Yvonne Nix's fraudulent concealment, plaintiff has been injured in that I've been precluded from raising this defensive claim of my statutory speedy trial right, which further worked to deny plaintiff "access to courts" on this issue as I'm bound by her decision which further worked to restrain me in my liberty as I would've elected to exert my statutory speedy trial claim pursuant to C.P.L. §30.30 (2),(a) to be released upon my own recognizance as this plaintiff will have 9 months and 25 days on July 17, 2019 which is my next court date.

Failure of co-conspirator-Yvonne Nix, Esq. to inform me of her waiver ultimately damaged the trust in the attorney-client relationship in violation of my First and Sixth Amendment of the United States Constitution.

## DISPARAGED PRIVILEGED COMMUNICATION

As a result of co-conspirator-Yvonne Nix's Esq. repeated consensual adjournments based upon the prosecution's unreadiness for trial, this plaintiff communicated my concerns in a letter about objecting or remaining mute on adjournment issues, when the prosecution vouched for defense's position on adjournment in summary stated that defense agreed to the adjournment as

co-conspirator-Yvonne Nix, Esq. acquiesced to the adjournment contrary to plaintiff's objection in writing.

Based upon the aforesaid, it can't be said that plaintiff has and/or is currently being provided with the level of effective assistance of counsel guranteed to plaintiff by the Constitution but from all reasonable inferences co-conspirator-Yvonne Nix, Esq., has and/or is acting as an agent for the state in violation of plaintiff's Sixth Amendment of the United States Constitution.

### EIGHTH CAUSE OF ACTION
### 1st AMENDMENT VIOLATION

Co-Conspirator-Yvonn Nix, Esq., deprived plaintiff's right to access to courts by fraudulently concealing the fact that she waived plaintiff's statutory right to my speedy trial claim pursuant to C.P.L. §30.30 et seq., thereby precluding plaintiff from raising that claim in the nisi prius court and from any further appellate review.

D'Quan Collis

7-13-19

(see attached)

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

As a result of defendants' actions plaintiff has been injured as follows: loss of enjoyment of life, therapeutic companion animals (cat & blue nose pitt); mental anguish, loss of sleep, anxiety, depression, embarrassment, pain & suffering; legal or civil injury, paranoia.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Declaratory;  **(see attached)**

Injunctive;  **(see attached)**

Punitive;   **(see attached)**

Treble; and  **(see attached)**

Compendatory   (see attached)

**RELIEF**

**Compensatory:**

Loss of enjoyment and/or quality of life; mental anguish, loss of
sleep, anxiety, depression, humiliation, loss of therapeutic
companion animals (1 grey female cat, 1 yr. old, XXL American
Pitbull terrier, color of grey aka "blue nose" at approximately
19" at the withers of the Razor Edge Bloodline.  Registered under
United Kennel Club (UKC), Halo, my baby was approx 1½ years old);
loss of 1 bdrm apartment with clothes, Nike sneakers 2 pair,
3/4 length shearling coat, leather trench coat, brown leather
Pele' Coat with fur around the hood, black Calvin Klein Bobber
jacket with imitation Chinchilla fur, 1 wireless HP Desktop
Computer with 5 in 1 HP printer, 19" monitor & keyboard, 32"
Sony flatscreen t.v., 1 white LG floor model remote control
air conditioner and queen size bed

                                    **Total: $25,000-$30,000**

**Treble:**
For violating Judiciary Law §487(1)
                                    **Total: $75,000-$90,000**

**Punitive:**
Based upon aforesaid defendant-          **Total: $500,000**
Yvonne Nix, intentionally violaed
plaintiff's 1st, 6th and 14th
Amendment of U.S. Constitution; and     **Total amount: $620,000**
Judiciary Law §487(1)

7-13-19                              D'Quee Collis

## INJUNCTION

**GROUNDS FOR RELIEF:**

It is essential that the court issue the requested preliminary injunction to prevent immediate and irreparable injury because:

1). As established by plaintiff's **certified** complaint unless restrained by this Court defendants, D.A., Cyrus Vance Jr., A.D.A., Mark Murphy and assigns will perform the acts sought to be enjoined to wit:

- **pre-trial hearings (Dunaway and Huntley);**
- **trial;**
- **plea bargaining (time served);**
- **and sentencing.**

2). As established by plaintiff's declarative complaint if the defendants D.A., Cyrus Vance Jr., A.D.A., Mark Murphy and assigns does perform the acts sought to be enjoined, the plaintiff will suffer immediate and irreparable harm in that on July 17, 2019 and thereafter the criminal case under indictment # 03510-2018 and/or docket # 2018NY038712 is slated to begin pre-trial hearings in which the fabricated evidence and the denial of the assistance of counsel has already occurred and upon belief will continue to occur throughout the pre-trial hearing on probable cause for plaintiff's arrest and at trial with a continuing deprivation of plaintiff's Constitutional rights under the Sixth and Fourteenth Amendment of the United

i.

States Constitution, and a denial of plaintiff's speedy trial rights under N.Y. C.P.L. §30.30(1),(a); (2),(a) have already been denied through defendant-Yvonne Nix, Esq.

(a)     Upon the state court's finding of probable cause it will be based upon fabricated evidence (felony complaint, police worn body-cam footage(s) and any other unknown fabricated evidence) with defendant-Yvonne Nix, Esq. acting in concert with the state actors; trial will begin thereafter;

(b)     The D.A.'s Office through it's A.D.A.s have consistently offered six years with five years post-release supervision as a plea offer and will significantly increase upon any finding of guilt, which would be inevitable if not enjoined and restrained.

3)     As established by plaintiff's declarative complaint it is reasonable to infer that a conspiracy to wrongly convict plaintiff of a crime or crimes by the defendants and others that may sign on in the future, are afoot and as a result, plaintiff has no adequate remedy at law; injunctive relief is the only remedy available for plaintiff's situation.

4)     As shown by the certified   complaint the issuance of a preliminary injunction of a preliminary injunction will not cause inconvience or loss to defendants in that:

Defendant's fabricated evidence, records and denied plaintiff's right to a fair trial and the effective assistance of counsel and should not now be allowed to complain about actions they undertook.

ii.

## RELIEF

### INJUNCTION

Plaintiff moves this court for a preliminary injunction pending the final judgement of this action.

The preliminary injunction will enjoin the defendants: District Attorney of New York County, Cynus Vance Jr.; New York City Police Department and/or the 34th Precint; the defendants, court officers, employees, N.Y.C. Police Officers, Yvonne Nix, Esq. and all persons, successors acting in concert and in participation with the defendants from:

1).   Prosecuting the criminal case of D'Juan E. Collins or by whatever name plaintiff may go by under Indictment # 03510/2018 and/or Docket # 2018NY038712;

2)   Violating plaintiff's United States Constitutional rights under the First, Sixth and Fourteenth Amendment and plaintiff's state law claims and to perform their official duties in a manner consistent with the United States Constitution and laws of the State of New York in connection with the criminal case currently pending against D JUAN COLLINS and/or Djuan Collins under the above indictment and/or docket number;

3)   Illegally arresting, harassing, retaliating, stalking and manufacturing evidence against plaintiff for exerting my Constitutional rights.

iii.

The defendant's violated the public's trust and undermined the integrity of the judicial system and violated their oath of office.  It is always in the public's interest that public servants and court officers obey the Law  of the Land the Constitution of the United States.

This request for preliminary injunction is based on all the averments, allegations, exhibits, reasonable inferences, and criminal state record and upon any discoverable evidence upon any hearing on this request.

### DECLARATORY

As is more fully shown below, this dispute concerns whether plaintiff's First, Sixth and Fourteenth Amendment of the United States Constitution has been violated; and state law claims pursuant to N.Y. C.P.L. §30.30 et seq; and Judiciary Law § 487 have been violated which this court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983 seeking equitable relief.

In order to resolve this controversy, plaintiff requests that this Court declare the rights'of plaintiff that has been violated as aforesaid in plaintiff's certified   complaint and that any conviction based upon the criminal case under Indictment number 03510/2018 and docket number 2018NY038712 would be invalid as a matter of law.

iv.

## DECLARATORY RELIEF REQUESTED

As aforesaid stated in plaintiff's certified complaint and set forth more fully below, there is a criminal case pending in the nisi prius court in People v. Collins, Indictment #03510/2018 where there exists sufficient facts for this court or will present sufficient facts upon a granting of a hearing, for this Court to declare the rights and remedies of the parties.

Plaintiff was arrested by the N.Y.C. Police Department on 9-22-19, arraigned on a felony complaint that was later fabricated by defendant-P.O. Lorraine Ramos and knowingly used in the criminal proceeding by defendant-A.D.A., Mark Murphy, where the information contained in the fabricated felony complaint was used in the grand jury where perjury testimony by witnesses was allowed without correction, where plaintiff was later indicted based upon the perjured testimony.

Plaintiff continues to be restrained in my liberty based upon the foregoing and it is the intention of the defendants-D.A. Cyrus Vance Jr., A.D.A., Mark Murphy and assigns to continue prosecuting the above mentioned indictment in hopes of obtaining a conviction albeit an invalid one.

For the reasons stated above and as aforesaid in plaintiff's certified complaint, plaintiff demands that:

v.

A.     Declare that the felony complaint by defendant-
Police Officer, Lorraine Ramos, shield #20126 and used in
the criminal proceeding under indictment #03510/2018 is
fabricated as she  never spoke with the alleged victim,
Melinda Owens;

B.     Declare that the defendant-Police Officer, Lorraine
Ramos, shield #20126 caused a deprivation of plaintiff's
liberty based upon the fabricated felony complaint;

C.     Declare that the continued prosecution of indictment
#03510/2018 based upon the fabricated felony complaint violates
plaintiff's procedural due process to a fair trial;

D.     Declare that the police body worn body-cam footage that was
forwarded to plaintiff by defendant-Yvonne Nix, Esq. is fabricated
as not an actual account of the events of that night leading up to
plaintiff's arrest;

E.     Declare that any fabricated police body worn body-cam
footage can't be used in the criminal proceeding under
indictment #03510/2018;

F.     Declare that the A.D.A., Mark Murphy and assigns knowingly
used a fabricated felony complaint for use in the criminal
proceeding under indictment #03510/2018

G.     Declare that A.D.A., Mark Murphy and/or assigns knowingly
fabricated the body-cam footage or cause the same to be fabricated

vi.

## 14 AMENDMENT VIOLATIONS

with the intention of introducing the fabricated body-cam footage in the criminal proceedings under indictment #03510/2018;

H.    Declare that the felony arraignment transcripts by defendant-Melissa Jiminez-DeArmas have been knowingly fabricated to cover-up the existence of the former felony complaint; "repeatedly kicked Melinda Owens in her face..."

I.    Declare that defendant-Police Officer, Keith Rodriguez failed to intervene to prevent defendant-Police Officer, Lorraine Ramos from fabricating the felony complaint, when he knew he alone spoke with the alleged victim Melinda Owens;

## 6th AMENDMENT VIOLATIONS

A.    Declare that defendant-Yvonne Nix, Esq. colluded with state actor A.D.A., Mark Murphy and assigns to deprive plaintiff's right to effective assistance of counsel by the following:

•    fraudulently concealing the fact that defendant waived plaintiff's statutory right to a speedy trial pursuant to C.P.L. §30.30 et seq without plaintiff's knowledge;

•    Deceiving plaintiff into waiving plaintiff's C.P.L. §180.80 right to be released own plaintiff's own recognizance based upon an assurance of defendant that she could get plaintiff a program that never occurred;

•    consented to numerous adjournments when the prosecution was not ready for trial allowing prosecution to cover-up

vii.

and manufacture evidence in order to strengthen the theory of the prosecution's case based upon the fabricated felony complaint;

•  consented to numerous adjournments when the prosecution have been stating that they were not ready for trial, causing plaintiff to languish in jail; using the numerous adjournments as a means to garner a plea bargain (e.g., time served upon the misdemeanor assault in the third degree);

•  denied plaintiff's right to access to court by waiving plaintiff's right to a speedy trial claim pursuant to C.P.L. §30.30 (1),(a); (2),(a) without plaintiff's knowledge thereby binding plaintiff to defendant-Yvonne Nix's, Esq decision which precludes plaintiff from raising a meritorial defense as plaintiff will have approximately 9 months and 25 days on July 17, 2019

•  defendant-Yvonne Nix, Esq. disparaged privileged communications to the Office of the New York County District Attorney, Cyrus Vance Jr. via A.D.A., Mark Murphy and assigns concerning my objections to the numerous adjournments that defendant-Yvonne Nix, Esq. consented to upon the prosecution's un-readiness for trial in plaintiff's letter dated, 5-16-19 where an A.D.A. vouched for defendant-Yvonne Nix's Esq position for the adjournment while defendant-Yvonne Nix remained mute; which was what this plaintiff suggested to do; to remain mute but without the vouching;

viii.

B.   Declare that plaintiff is not bound by defendant-Yvonne Nix's Esq. decision to waive plaintiff's C.P.L. §30.30 et seq right based upon the fraudulent concealment by D.C. of defendant;

C.   Declare that for purposes of plaintiff's speedy trial rights pursuant to C.P.L. §30.30 et seq that the includable time periods stems back to 9-27-18 (nunc pro tunc) to present, with the exception of any excludable periods; is upon the prosecution;

## 1st AMENDMENT VIOLATION

A.   Declare that defendant-Yvonne Nix, Esq. deprived plaintiff's right to access to courts by fraudulently concealing the fact that she waived plaintiff's statutory right to my speedy trial claim pursuant to C.P.L. §30.30 et seq thereby precluding plaintiff from raising that claim in court;

## VIOLATION OF JUDICIARY LAW §487 (1)

A.   Declare that defendant-Yvonne Nix, Esq. violated Judiciary Law §487 (1) by fraudulent concealment of defendant's waiver of plaintiff's statutory right pursuant to C.P.L. §30.30 et seq; deceiving plaintiff into waiving plaintiff's C.P.L. §180.80 right to be released upon my own recognizance based upon defendant's assurance that she could get me a program, which has never happened and as aforesaid colluding with A.D.A., Mark Murphy and assigns and others.

ix.

EXHIBIT:A

1

1    SUPREME COURT OF THE STATE OF NEW YORK

2    GRAND JURY OF THE COUNTY OF NEW YORK

3    ------------------------------------------------

4    PEOPLE OF THE STATE OF NEW YORK

5

6                        VS

7

8    DJUAN COLLINS

9    ------------------------------------------------

10                          NEW YORK, NEW YORK

11                          SEPTEMBER 27, 2018

12

13   BEFORE:

14           A QUORUM OF THE FIFTH SEP/OCT

15              2018 GRAND JURY

16

17

18   PRESENTED BY:

19           MARK MURPHY, ESQ.,

20               ASSISTANT DISTRICT ATTORNEY

21

22

23                    STEPHANIE GONZALEZ

24                    JEANNIE PARISI

25                    GRAND JURY REPORTERS

SG

Rodriguez

K E I T H                    R O D R I G U E Z,
          called as a witness, having been first
          duly sworn, responded to the oath and
          testified as follows:
          THE WITNESS:  Yes.
BY MR. MURPHY:
          Q.    Good morning, Officer.  Could you
please just state your name, shield and command.
          A.    Good morning.  My name's Officer
Rodriguez.  I work at the 34th Precinct and my
shield number is 21201.
          Q.    Officer, I want to direct your
attention to September 22, 2018 at
approximately 12:45 a.m., did you respond to a
911 call reporting an incident at 125 Post
Avenue here in Manhattan?
          A.    Yes.
          Q.    And did the -- did you receive a
radio run on your um --
          A.    Tablet.
          Q.    On your tablet that told you what
floor to go to at that location?
          A.    Yes.
          Q.    What floor did it tell you to go
to?

SG

4

Rodriguez

1        A.      It said to go to the third floor.

2        Q.      Did you make it to the third floor

3   of 125 Post Avenue?

4        A.      Yes.

5        Q.      Is this a residential building?

6        A.      Yes.

7        Q.      When you made it there, how many

8   doors were on the third floor?

9        A.      Two.

10       Q.      And could you hear anything from

11  either of those doors?

12       A.      Yes.

13       Q.      And which door was that?

14       A.      It was apartment 1 Charlie I

15  believe.

16       Q.      So, what could you hear inside of

17  that apartment?

18       A.      There was a man and a woman arguing

19  with each other, yelling.

20       Q.      Did you knock on that door to

21  apartment 1C?

22       A.      Yes.

23       Q.      Was the door opened up right away?

24       A.      No.

25       Q.      Did you announce that you were

SG

Rodriguez

1    police?

2         A.    Yes.

3         Q.    And um, what did they tell you from

4    the inside?

5         A.    The female Melinda Owens told us

6    that everything was okay, she was all right

7    before being interrupted by a male Djuan

8    Collins saying we're okay.  He said in

9    substance, get the caller.  Get the person who

10   made the complaint.  That person will come.

11   That person will open the door because I know

12   how that works.

13        Q.    Was the door immediately opened?

14        A.    No, after arguing back and forth

15   for a minute they opened the door.

16        Q.    When the door was opened um, did

17   you interview a woman who you came to know as

18   Melinda Owens?

19        A.    Yes.

20        Q.    Can you just describe for us what

21   she looked like when you saw her?

22        A.    When I first saw her she had her

23   face turned and refused to show me her entire

24   face until I asked her to step out.  That's

25   when I saw a gash to the side of her head with

Rodriguez

blood.

    Q.    Did you go inside of that apartment where she said it was her bedroom?

    A.    Yes.

    Q.    Did you see blood on the floor of that bedroom?

    A.    Yes.

    Q.    And did you also participate in the arrest of the man who was there Djuan Collins?

    A.    Yes.

    MR. MURPHY:  That's all the questions that I have for this officer. I will hear more testimony regarding this case.  Do any of the Grand Jurors have any questions?  Seeing no hands, you are excused.

    (WITNESS EXCUSED)

SG

Owens

```
 1              MR. MURPHY:  I will have you stand
 2         right here first and I want you to look
 3         at the back of the room.  He will swear
 4         you in first to make sure you tell him
 5         the truth.
 6    M E L I N D A              O W E N S ,
 7         called as a witness, having been first
 8         duly sworn, responded to the oath and
 9         testified as follows:
10              THE WITNESS:  I do.
11    BY MR. MURPHY:
12         Q.   Good afternoon.  Could you please
13    just state your name in a loud and clear voice
14    for everyone?
15         A.   Melinda Owens.
16         Q.   Ms. Owens, where do you currently
17    live?
18         A.   I live at 125 Post Avenue.
19         Q.   What apartment do you live at?
20         A.   1C.
21         Q.   What floor is apartment 1C?
22         A.   Three, the third floor.
23         Q.   Ms. Owens, do you know someone
24    named Dijuan Collins?
25         A.   Yes.
```

JP

Owens

1    Q.    Generally how do you know him?

2    A.    He has been my boyfriend for four

3    years.

4    Q.    And again, generally how would you

5    say things are between you and Mr. Collins?

6    A.    Rocky.

7    Q.    Now, I want you to focus on

8    September 21st, were you at your apartment that

9    day?

10   A.    Yes.

11   Q.    Can you just briefly describe for

12   us what happened late in the day on

13   September 21st when you were around your

14   apartment?

15   A.    I was with my children.  They left

16   like maybe 10, 20 minutes before he showed up.

17   And there were some guys just sitting around

18   hanging out like they always do.  And he

19   assumed I was messing around with one of the

20   guys.  He hit the guy, knocked him down.  And

21   he came straight to me.

22   Q.    Now, when you say he showed up, are

23   you referring to Dijuan Collins?

24   A.    Yes.

25   Q.    Were you hanging out in front of

Owens

1   your apartment building at this time?

2        A.    Yes, I was sitting in the front.

3        Q.    This was late in the afternoon?

4        A.    In the evening.

5        Q.    Now, when Mr. Collins came up what

6   was he saying to you generally?

7        A.    You bitch, you hoe, just calling me

8   all types of names.  And saying who was I

9   sleeping with, and is it this one or that one.

10  And it was just a mess.  It was a mess.

11       Q.    And what happened out in front of

12  your apartment when he was yelling at you?

13       A.    He hit the guy first and then after

14  he knocked him down he came towards me and

15  started punching me.

16       Q.    Was that with a closed fist?

17       A.    Yes.

18       Q.    Was he able to make any contact

19  with you?

20       A.    Yeah.

21       Q.    And what part of you was he

22  hitting?

23       A.    My face, which I was trying to

24  cover but that did not help.

25       Q.    And after he hit you in the face

JP

Owens

with his fist, what happened after that?

    A.    After that he told me to take my ass upstairs because he was going to hurt me. And I was trying to talk to him on the way upstairs but that did not work.

    Q.    And what happened when you got into your apartment?

    A.    He started to punch me, and he started kicking me and choking me.  He pulled my hair, he kicked me in my face, my head.  He broke my rib.  I really -- I was in and out of consciousness because he was hitting me so hard.

    Q.    Now, when you first got into your apartment, do you guys go to your bedroom?

    A.    Yeah, I mean I have roommates I eat with so he pushed me to make sure I got into the room quick enough.

    Q.    And when you guys are in the bedroom, what is the first thing that he does physically to you when you are in the bedroom?

    A.    He pushed me on the bed.

    Q.    When you are on the bed what does he do after that?

    A.    Punched me in my face and then

JP

Owens

started to choke me.

Q.    Was he was choking you with his hands?

A.    Yes, I was trying to fight away from him.  And when I got away from him a little bit, he started to kick me.  And it knocked me down and just everything went crazy from there.

Q.    And when he kicked you did he make contact with your head?

A.    He made contact with my head, with my torso, with my backside, my arms.  Pretty much everything above my legs.

Q.    And as he was kicking you was he also choking you at that time?

A.    He was punching me and choking me.

Q.    Okay, now as a result of him kicking you did you start bleeding from your head?

A.    Yes.

Q.    And was he wearing his sneakers when he kicked you?

A.    Yes.

Q.    As a result of all of this, was there blood in your bedroom?

JP

Owens

1      A.      Yes.

2      Q.      And as this is happening, are you

3 yelling for help and yelling at Mr. Collins?

4      A.      Yes.

5      Q.      Eventually do police respond to

6 your apartment?

7      A.      Yes.

8      Q.      And do they talk to Mr. Collins in

9 the hallway when they show up?

10      A.      They actually try to speak to me

11 first but he grabbed me and pulled me away.  He

12 did not want to tell anybody anything.  He was

13 trying to hide me and hide the fact that I was

14 bleeding.  So he did that.  They pulled him out

15 into the hallway and once they saw how I looked

16 they immediately arrested him.

17      Q.      And when they took you into the

18 apartment, did you also speak to them in that

19 same bedroom where this happened?

20      A.      Yes.

21      Q.      Did they call EMS to treat you?

22      A.      Yes.

23      Q.      Did you take an ambulance to the

24 hospital directly from this around 1:00 a.m.?

25      A.      Yes.

JP

Q.     And in that ambulance did they give you a neck brace?

A.     Yes.

Q.     And were you feeling pain to that broken rib?

A.     Not at the moment.  My body was basically in shock of everything I just experienced and I was so scared.

Q.     When did you ever start to feel the pain to the broken rib?

A.     Once they started moving me around to see what was wrong with me where the blood was coming from like was I hurt any where, they saw the bruising.  They were just trying to make sure I had no broken bones.  But then I was like wow, I'm really feeling this.  And that is when they sent me to get X-rays.

Q.     Tell me about the pain to your rib that you have been experiencing since then?

A.     It is horrific.  I can barely sleep.  I can barely breathe.  It is just horrible.

Q.     And also as a result of this was your neck sore from him choking you?

A.     Yes.

JP

Owens

Q.    And can you tell me just briefly about how you felt that soreness as a result?

A.    It is hard to swallow.  It is hard to chew.  Even when I drink water it hurts because it is still sore.

Q.    And did you also have significant bruising to your backside as a result of him kicking you?

A.    Yes.

Q.    And were you in the hospital as a result of this from Saturday around 1:00 a.m. until Monday September 24th getting treatment?

A.    Yes.

Q.    I'm just going to show you a picture what is marked as Grand Jury Exhibit 1 for identification; do you recognize that picture?

A.    Yes.

Q.    What area are we looking at in this picture?

A.    That is right when you open the door, right next to my closet.

Q.    And does this fairly and accurately show what your apartment looked like that night after Mr. Collins did this to you?

JP

Owens

A.     Yes.

MR. MURPHY:  And I will accept

Grand Jury Exhibit 1 into evidence.

Q.     In the middle left portion, is that

blood from your head?

A.     Yes.

Q.     Okay, I will publish this later to

the grand jury.  Did I ask you to meet me

yesterday in my office?

A.     Yes.

Q.     Did we go to my photo unit to get

pictures taken?

A.     Yes.

Q.     So I will show you Grand Jury

Exhibit 2A through 2E.  Just do me a favor, and

just look at each of these and tell me do these

pictures fairly and accurately depict what your

body looked like yesterday when we took those

photos?

A.     Yes.

MR. MURPHY:  So I will offer and

accept these photos into evidence.

Q.     Looking at grand jury Exhibit 2A,

what are we looking at in that photo?

A.     Him grabbing me, basically that is

JP

the marks he left on me.

Q.     On your arm?

A.     Yes, on my right arm.

Q.     And Grand Jury Exhibit 2B, is this the same thing just on your left arm?

A.     That is his fingers on my left arm.

Q.     Is that from him grabbing you and --

A.     From him holding me down.

Q.     I'm showing you 2C; is this the rib that was broken?

A.     Yes.

Q.     Is that the bruising from it?

A.     Yes.

Q.     And I'm showing you 2D; is this just a zoomed in version of that picture?

A.     Yes.

Q.     And I'm showing you 2E; is this the bruising on your backside?

A.     Yes.

Q.     Is that from him kicking you?

A.     Yes, he tried to kick me down.

MR. MURPHY:  I have no further questions for this witness.  Do any of the grand jurors?  Seeing no hands.  You

JP

1          are excused.

2                    THE WITNESS:   Thank you.

3               (WITNESS EXCUSED)

MR. MURPHY:  So I will publish the
pictures in evidence.  This is grand jury
Exhibit 1.  Is that somewhat better?  I
am also be able to pass this around if
this is not working:  2A, 2B, 2C, 2D and
2E.                    So again, I'm
continuing this case.  I will ask that we
keep the same code word, Post Avenue.
Thank you.

Gonzalez

1 E L A Y N E    G O N Z A L E Z,

2    called as a witness, having been first

3    duly sworn, responded to the oath and

4    testified as follows:

5     THE WITNESS:  I swear.

6     THE FOREPERSON:  Have a seat.

7 BY MR. MURPHY:

8   Q. Good afternoon.  Could you please

9 just state your name and in a loud, clear

10 voice?

11   A. Elayne Gonzalez.

12   Q. And Ms. Gonzalez, where do you

13 live?

14   A. 123 Post Avenue, New York.

15   Q. And is 123 Post Avenue directly

16 next door to 125 Post Avenue?

17   A. Yes.

18   Q. And what floor do you live on?

19   A. Third floor.

20   Q. And does your bedroom share a wall

21 with the neighboring 125 Post Avenue?

22   A. Yes.

23   Q. Now, were you at home on the night

24 of September 21st leading into the earlier

25 morning of September 22nd?

GA

Gonzalez

A.    Yes, I stepped out for a second.

Q.    I want to talk about when you were
at home on September 21st around 9:42 p.m.
Were you in your bedroom?

A.    Yes.

Q.    And that's the bedroom that shares
a wall with 125 Post Avenue?

A.    Yes, correct.

Q.    Can you tell us generally what you
were hearing?

A.    I couldn't hear clearly at the
moment. I heard arguing from a man and a
woman. I heard things being thrown. I heard
like a loud -- that something hard hit the
floor. That happened a few times.

Q.    And when you say something hard hit
the ground a few times, would that be about
four or five times?

A.    Yes.

Q.    And did you hear a woman screaming
stop?

A.    Yes. I -- and I also heard
something hit my wall or like punch or
something.

Q.    And around 10:30 that night, did

GA

Gonzalez

1    you leave your bedroom?

2         A.    Yes.

3         Q.    And around 11:50 at night, did you

4    return to your apartment?

5         A.    Yes, around 11:53.

6         Q.    And did you go to your bedroom and

7    hear more from next door again?

8         A.    Yes.  They were having an

9    altercation.  And I heard a female say stop and

10   to get off of her and to please leave, that she

11   will not talk to the cops or anything, that

12   there was blood all over her floor and just

13   kept on arguing.  And he like -- she said to

14   get off of her.

15        Q.    Did she also say that she couldn't

16   breathe?

17        A.    Yes, she said she couldn't breathe

18   and that he was hurting her.

19        Q.    And did he say anything in

20   response?

21        A.    He said -- when she said that, he

22   was going for him to get out -- he said no.

23   They were also arguing and he said something

24   about, I was calling you all day, you didn't

25   answer.  You were with somebody else.  She said

GA

Gonzalez

1    -- she kept saying no.  And from what I could

2    hear, he was hitting her because she was, like,

3    screaming in pain and saying no and to stop in

4    a painful voice.

5            Q.    Did you hear her asking for an

6    ambulance?

7            A.    Yes, she asked for an ambulance and

8    he said no.

9            Q.    And did things get a little quieter

10   closer to 12:11 now on September 22nd?

11           A.    Yes, and then they started back up

12   around 12:25.

13           Q.    And what was the male voice saying?

14           A.    That's when he said, I fucking love

15   you.  And he also said something about a

16   cigarette and about the cheating.

17           Q.    And when that is happening, did you

18   call the police eventually?

19           A.    Yes, I did.

20           Q.    And would that have been around

21   12:45?

22           A.    Yes.

23           Q.    And did the police come to your

24   apartment and speak to you around 12:50?

25           A.    Yes, they did.

GA

Gonzalez

Q.    And after they did that, could you
hear from the same direction as those sounds
knocking at a door next door?

A.    Yes.  They were knocking for a
little bit until somebody opened the door.  I
went to check the window.  I saw the police
cars at this time outside, and I also heard
them ask the female if that was her apartment.

MR. MURPHY:  I have no further
questions for this witness.  Do any of
the grand jurors?  Seeing no hands, I'll
walk you out.

(WITNESS EXCUSED)

GA

EXHIBIT: B

ORI: NY0303034
NYCPD PCT 034
NYSID: 08072547K

### New York State Division of Criminal Justice Services
4 Tower Place
Albany NY 12203-3764
Tel: 1-800-262-DCJS
Michael C. Green, Executive Deputy Commissioner of the NYS Division of Criminal Justice Services

## ❖ Transaction Data



No Photo
Available

| | |
|---|---|
| Name: | DJUAN COLLINS |
| Transaction ID: | 33321698 |
| Agency ORI: | NY0303034 |
| SSN: | |
| Type of Submission: | **ARREST** |
| Date Fingerprinted: | September 22, 2018 |
| Reason Fingerprinted: | Adult Arrest |

## Arrest/Charge Information
Arrest Date:September 22, 2018 01:06 am (01:06:00)

| | |
|---|---|
| Name: | DJUAN COLLINS |
| Date of Birth: | July 16, 1970 |
| US Citizen: | |
| Sex: | Male |
| Race: | Black |
| Ethnicity: | Not Hispanic |
| Height: | 5' 09" |
| Weight: | 180 |
| Age at time of crime/arrest: | 48 |
| Address: | 714 EAST 214 STREET , BRONX , NY 10467 |
| Fax Number: | M34901 |
| Place of Arrest: | NYCPD 34 |
| Arrest Type: | Unknown |
| Date of Crime: | September 22, 2018 |
| Place of Crime: | NYCPD 34 |
| Criminal Justice Tracking No.: | 68756028Z |
| Arresting Agency: | NYCPD PCT 034 |
| Arresting Officer ID: | 953826 |
| Arrest Number: | M18649472 |
| Arraignment: | New York County Criminal Court |

Arrest Charges:

-- Strangulation 2nd-Obstruct Breath/Blood Circ-Cause Physical Injury

| PL.121.12 | | Class D | Felony | Degree 2 | NCIC 1399 |
|---|---|---|---|---|---|

-- Assault 3rd Degree: With Intent To Cause Physical Injury

| PL.120.00 | Sub 01 | Class A | Misdemeanor | Degree 3 | NCIC 1399 |
|---|---|---|---|---|---|

## ❖ Transaction Status Information

| Activity | Date/Time | Elapsed |
|---|---|---|

Initial Transaction Received    September 22, 2018 03:44:28 am
Online Data Received    September 22, 2018 03:44:45 am
Transaction Completed    September 22, 2018 03:44:56 am    0 Hour(s) 0 Minute(s)
Rapsheet Produced    September 22, 2018 03:45:01 am

## ● FBI Information

The following information is provided in response to your request for a search of the FBI based on:

NYSID:    08072547K
Purpose Code:    C

ATN/III-SID8072547K/CASE- 18649472
******************** CRIMINAL HISTORY RECORD ********************

******************** Introduction ********************

This rap sheet was produced in response to the following request:

State Id Number    NY8072547K ()
Request Id
Purpose Code    C
Attention    III-SID8072547K/CASE- 18649472

The information in this rap sheet is subject to the following caveats:

This record is based only on the SID number in your request-NY8072547K
Because additions or deletions may be made at any time, a new copy
should be requested when needed for subsequent use. (US; 2018-09-22)
All entries contained in this FBI record are based on fingerprint
comparisons and pertain to the same individual. (US; 2018-09-22)
The use of this record is regulated by law. It is provided for official
use only and may be used only for the purpose requested. (US;
2018-09-22)

******************** IDENTIFICATION ********************

Subject Name(s)

COLLINS, D JUAN E
COLLINS, DJUAN (AKA)
COLLINS, DJUAN (AKA)
COLLINS, DJUAN ELIHU (AKA)
COLLINS, DEONTE (AKA)
COLLINS, DJAUNE (AKA)
COLLINS, DJUAN (AKA)
COLLINS, DJUANA (AKA)
COLLINS, DJUANE (AKA)
COLLINS, DJUANELIHU (AKA)
COLLINS, DJUANR (AKA)
COLLINS, DJUANE (AKA)
COLLINS, JUAN (AKA)
COLLINS, NICHOLASE (AKA)
JOHNSON, JEMALE (AKA)

Subject Description

FBI Number      State Id Number
8100KA9      NY8072547K (NY)

Social Security Number
328748154
328748145

Male                       Black

| Height | Weight | Date of Birth |
|--------|--------|---------------|
| 5'06"  | 145    | 1970-07-16    |
|        |        | 1971-07-16    |

| Hair Color | Eye Color | Fingerprint Pattern |
|------------|-----------|---------------------|
| Black      | Brown     | PMC1041713DI64AA1915 (FPC) |

Scars, Marks, and Tattoos
Code                       Description, Comments, and Images
TAT CHEST                  , TATTOO ON CHEST
SC NOSE                    , SCAR ON NOSE


| Place of Birth | Citizenship |
|----------------|-------------|
| Illinois       | United States |

Fingerprint Images
(N  Fingerprint Image Transmitted
Comment:)

Photo Images
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )
(No Photo Image Transmitted  )


*********************** CRIMINAL HISTORY ***************************

=================================== Cycle 001 ===================================
Earliest Event Date        1988-12-23
--------------------------------------------------------------------
Arrest Date                1988-12-23
Arrest Case Number         837880
Arresting Agency           ILCPD0000 POLICE DEPARTMENT
Charge                     1
        Charge Literal     BURGLARY
        Severity           Unknown
=================================== Cycle 002 ===================================
Earliest Event Date        1989-03-18
--------------------------------------------------------------------
Arrest Date                1989-03-18
Arrest Case Number         89-014726
Arresting Agency           IL0160000 CO SHER-PD COMM CTR
Subject's Name             COLLINS,JUAN
Charge                     1
        Charge Literal     BURGLARY
        Severity           Unknown
=================================== Cycle 003 ===================================

```
Arrest Date              1989-06-23
Arrest Case Number       837880
Arresting Agency         ILCPD0000 POLICE DEPARTMENT
Subject's Name           COLLINS,DJUAN
Charge                   1
         Charge Literal  ARMED ROBBERY
             Severity    Unknown
```

```
Court Disposition        (Cycle 003)
Court Case Number
Court Agency
Charge                   1
         Charge Literal  ARMED ROBBERY
             Severity
             Disposition ( ;  06-23-89 FNPC)
```
======================================== Cycle 004 ========================================
```
Earliest Event Date      1990-04-12
```
------------------------------------------------------------------
```
Arrest Date              1990-04-12
Arrest Case Number       837880
Arresting Agency         ILCPD0000 POLICE DEPARTMENT
Subject's Name           COLLINS,DJUAN E
Charge                   1
         Charge Literal  BATTERY
             Severity    Unknown
```
======================================== Cycle 005 ========================================
```
Earliest Event Date      1990-06-02
```
------------------------------------------------------------------
```
Arrest Date              1990-06-02
Arrest Case Number       837880
Arresting Agency         ILCPD0000 POLICE DEPARTMENT
Subject's Name           COLLINS,DJUAN E
Charge                   1
         Charge Literal  BURGLARY
             Severity    Unknown
Charge                   2
         Charge Literal  SIMP BTRY
             Severity    Unknown
```
======================================== Cycle 006 ========================================
```
Earliest Event Date      1990-06-30
```
------------------------------------------------------------------
```
Arrest Date              1990-06-30
Arrest Case Number       837880
Arresting Agency         ILCPD0000 POLICE DEPARTMENT
Subject's Name           COLLINS,DJUAN R
Charge                   1
         Charge Literal  ATT THEFT
             Severity    Unknown
```
======================================== Cycle 007 ========================================
```
Earliest Event Date      1990-08-30
```
------------------------------------------------------------------
```
Arrest Date              1990-08-30
Arrest Case Number       837880
Arresting Agency         ILCPD0000 POLICE DEPARTMENT
Subject's Name           JOHNSON,JEMAL E
Charge                   1
         Charge Literal  BATTERY
             Severity    Unknown
```
======================================== Cycle 008 ========================================
```
Earliest Event Date      1990-09-12
```
------------------------------------------------------------------
```
Arrest Date              1990-09-12
Arrest Case Number       837880
```

```
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,DJUAN
Charge                  1
        Charge Literal  WRT BURGLARY
        Severity        Unknown
================================ Cycle 009 ================================
Earliest Event Date     1991-04-20
------------------------------------------------------------------
Arrest Date             1991-04-20
Arrest Case Number      837880
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,DJUAN E
Charge                  1
        Charge Literal  THEFT
        Severity        Unknown
================================ Cycle 010 ================================
Earliest Event Date     1991-06-24
------------------------------------------------------------------
Arrest Date             1991-06-24
Arrest Case Number      837880
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,D JUAN
Charge                  1
        Charge Literal  AGGRAVATED ASSAULT
        Severity        Unknown
================================ Cycle 011 ================================
Earliest Event Date     1991-08-06
------------------------------------------------------------------
Arrest Date             1991-08-06
Arrest Case Number      837880
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Charge                  1
        Charge Literal  CRIM TRESP
        Severity        Unknown
================================ Cycle 012 ================================
Earliest Event Date     1991-12-21
------------------------------------------------------------------
Arrest Date             1991-12-21
Arrest Case Number      91673643
Arresting Agency        IL0160000 CO SHER-PD COMM CTR
Subject's Name          COLLINS,DJUAN E
Charge                  1
        Charge Literal  VOP
        Severity        Unknown
================================ Cycle 013 ================================
Earliest Event Date     1992-01-03
------------------------------------------------------------------
Arrest Date             1992-01-03
Arrest Case Number      B-19592
Arresting Agency        IL099015C RECPT/CLASS CORR CTR
Subject's Name          COLLINS,DJUAN
Charge                  1
        Charge Literal  BURGLARY
        Severity        Unknown
------------------------------------------------------------------
Court Disposition       (Cycle 013)
Court Case Number
Court Agency
Charge                  1
        Charge Literal  BURGLARY
        Severity
        Disposition     ( ;  5 YS)
================================ Cycle 014 ================================
Earliest Event Date     1992-02-04
------------------------------------------------------------------
```

```
Arrest Date
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,DJUAN E
Charge                      1
        Charge Literal      CRIMINAL TRESPASS STATE LAND
            Severity        Unknown
================================= Cycle 015 =================================
Earliest Event Date         1992-03-25
----------------------------------------------------------------------------

Arrest Date                 1992-03-25
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,DJUAN E
Charge                      1
        Charge Literal      BFW CRIM TRESP STATE SUP LAND
            Severity        Unknown
================================= Cycle 016 =================================
Earliest Event Date         1992-03-26
----------------------------------------------------------------------------

Arrest Date                 1992-03-26
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,DJAUN E
Charge                      1
        Charge Literal      BATTERY
            Severity        Unknown
================================= Cycle 017 =================================
Earliest Event Date         1992-05-30
----------------------------------------------------------------------------

Arrest Date                 1992-05-30
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,NICHOLAS E
Charge                      1
        Charge Literal      THEFT
            Severity        Unknown
================================= Cycle 018 =================================
Earliest Event Date         1992-08-07
----------------------------------------------------------------------------

Arrest Date                 1992-08-07
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,DEONTE
Charge                      1
        Charge Literal      CRIM DAM TO PROPERTY
            Severity        Unknown
Charge                      2
        Charge Literal      BATTERY
            Severity        Unknown
================================= Cycle 019 =================================
Earliest Event Date         1992-08-12
----------------------------------------------------------------------------

Arrest Date                 1992-08-12
Arrest Case Number          837880
Arresting Agency            ILCPD0000 POLICE DEPARTMENT
Subject's Name              COLLINS,DJUAN
Charge                      1
        Charge Literal      ARMED ROB
            Severity        Unknown
================================= Cycle 020 =================================
Earliest Event Date         1993-06-11
----------------------------------------------------------------------------

Arrest Date                 1993-06-11
Arrest Case Number          B19592
```

```
Arresting Agency
Subject's Name          COLLINS,DJUAN
Charge                  1
        Charge Literal  BURGLARY
        Severity        Unknown
--------------------------------------------------------------------
Court Disposition       (Cycle 020)
Court Case Number
Court Agency
Charge                  1
        Charge Literal  BURGLARY
        Severity
        Disposition     ( ;  5 YS)
============================= Cycle 021 ============================
Earliest Event Date     1993-08-22
--------------------------------------------------------------------
Arrest Date             1993-08-22
Arrest Case Number
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,DJUAN
Charge                  1
        Charge Literal  CTTSPL
        Severity        Unknown
Charge                  2
        Charge Literal  D/C
        Severity        Unknown
============================= Cycle 022 ============================
Earliest Event Date     1994-01-25
--------------------------------------------------------------------
Arrest Date             1994-01-25
Arrest Case Number
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,DJUAN E
Charge                  1
        Charge Literal  THEFT
        Severity        Unknown
============================= Cycle 023 ============================
Earliest Event Date     1994-04-04
--------------------------------------------------------------------
Arrest Date             1994-04-04
Arrest Case Number
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Charge                  1
        Charge Literal  BATTERY
        Severity        Unknown
============================= Cycle 024 ============================
Earliest Event Date     1994-08-18
--------------------------------------------------------------------
Arrest Date             1994-08-18
Arrest Case Number
Arresting Agency        ILCPD0000 POLICE DEPARTMENT
Subject's Name          COLLINS,DJUAN
Charge                  1
        Charge Literal  CRIM TRESPASS TO VEHICLES AM
        Severity        Unknown
************************* INDEX OF AGENCIES *************************

Agency                  POLICE DEPARTMENT; ILCPD0000;
Agency Email Address
Agency Email Address
Agency Email Address
Address
                        RECORDS DIVISION
                        CHICAGO, IL 606531020
```

September 22, 2018 03:45:01 am

```
Agency                  CO SHER-PD COMM CTR; IL0160000;
Agency Email Address
Agency Email Address
Agency Email Address
Address


              DES PLAINES, IL 60016

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Agency                  PECPT/CLASS CORR CTR; IL099015C;
Agency Email Address
Agency Email Address
Agency Email Address
Address


              LOCKPORT, IL 60441


 * * * END OF RECORD * * *
```

September 22, 2018 03:45:01 am

EXHIBIT:C

PEOPLE VS.    **DJUAN COLLINS**    COUNTY OF    NEW YORK    3510 -18

INDICTMENT NO.

**2018NY038712**

# Supreme Court of the State of New York
## County of New York

**NOTICE OF APPEARANCE**

3510/18

**Case Number/Year**

THE PEOPLE OF THE STATE OF NEW YORK
*VS.*

Djuan Collins
_____
Defendant

☐    Interpreter Required

_____
Language

To the Clerk of the Court:
You are hereby notified that I appear for the defendant in the above-entitled action

Law Firm for the Defendant......*Legal Aid Society*

Attorney for the Defendant......*Yvonne Nix*

_____
Signature

Address    *49 Thomas St*

*NY NY 10013*

☒    Legal Aid Society
☐    NY County Defender Services
☐    Neighborhood Defender Service
☐    18B
☐    Retained

Telephone Number    (212) 298-5245

Beeper/Cell Number    (917) 359-8806

Fax Number    (646) 616-4245

Dated:    10/25/18

IOUNT _____

ILED _____ 20 ____ $ _____

RETY _____

_____

**TICLE 730 EXAMINATION**

DERED _____ 20 _____

WARRANT ORDERED _____ 20 _____

JUSTICE _____

☐ BAIL FORF. ☐ ROR REVOKED

ROW _____ 20 ____ ☐ VOL. ☐ INVOL.

JUSTICE _____

☐ RECALL FORF.    ☐ BAIL EXON    ☐ BAIL REINSTATED

EXHIBIT: D

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Djuan Collins (M 48),

                         Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP: GIRLFRIEND

**FELONY**
ADA Mark Murphy
(212) 335-9947

Police Officer Lorraine Ramos, Shield #20126 of the 34th Precinct, states as follows:

*The defendant is charged with:*

| | | |
|---|---|---|
| 1 | PL 121.12 | Strangulation in the Second Degree (defendant #1: 1 count) |
| 2 | PL 120.00(1) | Assault in the Third Degree (defendant #1: 1 count) |

On or about September 22, 2018 at about 12:20 A.M., at 125 Post Avenue in the County and State of New York, The defendant, with intent to impede the normal breathing and circulation of the blood of another person, applied pressure on the throat and neck of such person, and thereby caused stupor, loss of consciousness for any period of time, and any other physical injury and impairment; the defendant, with intent to cause physical injury to another person, caused such injury to another person.

*The factual basis for these charges are as follows:*

I am informed by an individual known to the District Attorney's Office, that she observed the defendant punch her in the head and kick her, causing bleeding to her head and substantial pain. I am further informed that she observed the defendant place both hands around her neck, while she was on the ground, and apply pressure to her neck, causing her to lose consciousness.

**False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.**

P.O. Ramos

Police Officer Lorraine Ramos               9/22/18       1334
                                        Date           Time

#1C

EXHIBIT: **E**

| | | Present | Absent | Readiness |
|---|---|---|---|---|
| | HOLD ☐ App Waived | ☐ Defendant | ☑ Defendant | ☐ π ready |
| /29/18 | Nog+A  Noo/R | ☑ Attorney | ☐ Attorney | ☐ π not ready |

**Interpreter**

**Reason for Adjournment**

| | |
|---|---|
| ☐ S/D | ☐ Hearing |
| ☐ OFD/Discovery | ☐ Bench Trial |
| ☐ Possible Disposition | ☐ Jury Trial |
| ☐ Decision | ☐ Program |

X-1E

Waive 180.80
30.30

F  G+A 10/11/18

☑ TOP

SBC

**Notify**

| | Charged | | Defendant | | Defendant Excused |
|---|---|---|---|---|---|
| ☐ | Charged | ☐ | Defendant | ☐ | Defendant Excused |
| ☐ | Excluded | ☐ | Attorney | | |

Bail Condition          Judge

| | | Present | Absent | Readiness |
|---|---|---|---|---|
| | HOLD _____ | ☐ Defendant | ☐ Defendant | ☐ π ready |
| | | ☐ Attorney | ☐ Attorney | ☐ π not ready |

**Interpreter**

**Reason for Adjournment**

| | |
|---|---|
| ☐ S/D | ☐ Hearing |
| ☐ OFD/Discovery | ☐ Bench Trial |
| ☐ Possible Disposition | ☐ Jury Trial |
| ☐ Decision | ☐ Program _____ |

☐ TOP

**Notify**

| | Charged | | Defendant | | Defendant |
|---|---|---|---|---|---|
| ☐ | Charged | ☐ | Defendant | ☐ | Defendant |

EXHIBIT:F

GJ #5-4

Filed:

Waived

2018NY038712

No.

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DJUAN COLLINS,

Defendant.

INDICTMENT

STRANGULATION IN THE SECOND DEGREE, P.L. §121.12
ASSAULT IN THE THIRD DEGREE, P.L. §120.00(1)

CYRUS R. VANCE, JR., District Attorney

A True Bill

Foreman

Mark Murphy
Trial Bureau 50

ADJOURNED TO PART F ON 10/11/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DJUAN COLLINS,

Defendant.

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuses the defendant of the crime of **STRANGULATION IN THE SECOND DEGREE**, in violation of Penal Law §121.12, committed as follows:

The defendant, in the County of New York, on or about September 22, 2018, with intent to impede the normal breathing and circulation of the blood of a person known to the Grand Jury, applied pressure on the throat and neck of such person, and thereby caused stupor, loss of consciousness for any period of time, and any other physical injury and impairment.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **ASSAULT IN THE THIRD DEGREE**, in violation of Penal Law §120.00(1), committed as follows:

The defendant, in the County of New York, on or about September 22, 2018, with intent to cause physical injury to a person known to the Grand Jury, caused such injury to such person.

CYRUS R. VANCE, JR.
District Attorney

EXHIBIT: G

P. 34

$27.⁰⁰

# TRANSCRIPT REQUEST

**TODAY'S DATE:** 10/16/18      **DUE DATE:** Daily

**NAME:** Gregory Rhoubottom

**TELEPHONE #:** (347) 797-8194

**COURT REPORTER:** D. Frigo   M. Jimenez

**COURT REPORTER TEL. #** (646) 386-4787

**DEFENDANT'S NAME:** Djuan Collins

**DOCKET/INDICTMENT #:** 2018NY038712

**DATE OF PROCEEDINGS:** 9/22/18

**PART/JUDGE:** AR3, Watters

************COURT REPORTERS*****************
PLEASE NOTIFY THE PERSON ORDERING THE MINUTES WITH AN ESTIMATE
FOR THE TRANSCRIPT OR IF THE CASE DOES NOT APPEAR ON THE CALENDAR.

CSEA - 2009

## COURT REPORTER MINUTE AGREEMENT FORM
### (Private Party Transactions)

Please Type or Print Clearly

1. _Criminal_ Court, _New York_ County.

Part No. _AR3_ Name of Judge/Justice _Watters_

2. Name of Case _People_
_v. Juan Collens_

3. Court Docket/File/Index Number _2018NY138712_  4. Date(s) of Minutes Requested _10/16/18_

5. Type of Proceeding (check one or more):

Arraignment _✓_  Application _____  Hearing _____  Plea _____  Trial _____  Sentence _____

Other (specify): _____

6. Pursuant to Section 108 of the Rules of the Chief Administrative Judge, the rates per page for transcripts of proceedings reported in New York State courts shall be as follows:

| | | |
|---|---|---|
| Regular Delivery: | $3.30 - $4.30 (original)<br>$1.00 (each copy) | |
| Expedited Delivery: | $4.40 - $5.40 (original)<br>$1.10 (each copy) | |
| Daily Delivery: | $5.50 - $6.50 (original)<br>$1.25 (each copy) | |

_$27.00_
_Balance_
_Received $7 on 10/22/18_

7. Rate to be Charged Per Page: _5.40_

Regular _____  Expedited _✓_  Daily _____  Other _____  No. of Copies Ordered _1_

8. Estimated Number of Pages: _5_   9. Estimated Delivery Date: _10/22/18_

10. Agreed:

_____ / _____ _____
Court Reporter (signature)         Attorney/Party (signature)         Date of Agreement

Name of Reporter _Melissa Jimenez_   Name of Attorney/Party _____
Address _____   Firm/Address _____

Telephone Number _____   Telephone Number _____
Fax Number _____   Fax Number _____

A copy of this agreement form will be maintained by the court reporter and must be provided by the court reporter at the request of the State.

1

1   CRIMINAL COURT OF THE CITY OF NEW YORK
    COUNTY OF NEW YORK:   PART AR3
2   ------------------------------------X

3   THE PEOPLE OF THE STATE OF NEW YORK,      DOCKET NO.

4              -against-                      2018NY038712

5   DJUAN COLLINS,

6                            Defendant.

7   ------------------------------------X

8                        100 Centre Street
                         New York, New York
9
                         September 22, 2018
10
11  B E F O R E:

12        THE HONORABLE J. WATTERS

13  A P P E A R A N C E S:

14  FOR THE PEOPLE:

15        CYRUS R. VANCE JR.
          District Attorney, New York County
          One Hogan Place
16        New York, New York 10013

17        BY:  ROY CHON, ESQ.

18
    FOR THE DEFENDANT:
19
          LEGAL AID SOCIETY
20        49 Thomas Street
          New York, New York 10013
21
          BY:  YVONNE NIX, ESQ.
22

23                              Melissa Jimenez-De Armas
                                Official Court Reporter
24

25

PROCEEDINGS

1    COURT OFFICER:  2018NY038712, Djuan Collins.

2 Defendant is charged with strangulation in the second

3 degree, assault third degree.  Defendant also has a

4 warrants, 2016 SAP warrant SX39136, open container of

5 alcohol.

6    Counsel, waive the readings, not the rights?

7 MS. NIX:  Yes

8 COURT OFFICER:  Move to vacate the warrants?

9 MS. NIX: Yes.

10    THE COURT:  Warrant vacated, summons dismissed.

11 People?

12    MR. CHON:  The People are serving felony grand

13 jury notice and inquiring as to cross.

14    MS. NIX:  Serving written cross grand jury notice

15 to the People.

16    MR. CHON:  People are in receipt.

17    The People are serving on defense counsel a

18 Wiggins letter indicating our intent to present the case to

19 the grand jury in room 907 of One Hogan Place on

20 September 26th, at 10:00 a.m.

21    The People are reserving both statement and

22 identification notice at this time and submitting a family

23 registry to the Court and requesting a temporary order of

24 protection in this matter.  We are also requesting $50,000

25 bail.

1        This defendant's out-of-state record, to begin

2     with, includes burglary, armed robbery, battery and

3     trespass.

4        In New York City alone he has two misdemeanor

5     convictions, two parole revocations and two felony

6     convictions, including a robbery in the second degree where

7     he was sentenced to five to ten years in prison.  He's also

8     now a predicate felon from a drug case where he was

9     sentenced to eight years' state prison, and as a predicate

10    felon he is facing a minimum of three years' state prison

11    here in this case.

12        Here in this case a third-party caller alerted

13    police to respond to the victim's apartment and the victim

14    reports that the defendant punched and kicked her before

15    throwing her to the ground, proceeding to climb to top of

16    her, choking her with both of his hands until she lost

17    consciousness.  A police officer observed the victim

18    bleeding from the head and blood on the walls of the

19    apartment, and the victim did go to the hospital for a CT

20    scan and treatment.  Because of the seriousness of this

21    case and the defendant's prior record and in this case,

22    bail is necessary to secure his return.

23        THE COURT:  How much bail did you recommend?

24        MR. CHON: $50,000.00.

25        MS. NIX: I would ask the Court set a lower, more

1    reasonable bail, something in the area of maybe $5,000, or

2    alternatively consider releasing my client on his own

3    recognizance.

4         My client, while he does have a criminal record,

5    his last conviction is from 2007, nearly eleven years ago.

6    He completed his parole, he has been living with some

7    pretty serious disabilities, has a pretty serious medical

8    condition, has been attending weekly therapy sessions and

9    has been seeing doctors and has been trying to get his life

10   together, and he absolutely denies these allegations.

11        While he does have a record, he does not have any

12   type of history of domestic violence.  He has battled

13   substance abuse and he has overcome pretty significant

14   substance abuse in the past and denies any type of domestic

15   violence allegations here.  I did confirm my client's

16   community ties with his mother, and my client's family has

17   known the complaining witness who has been involved with my

18   client for the past four years as somebody who is a

19   substance abuser and who tends to be quite belligerent on

20   occasion.

21        My client has been living in the same apartment

22   for four years, he has a cat and a dog in his apartment, he

23   is very much involved in his son's life, he also has a

24   grandson who he has been in regular contact with.  His

25   family is very concerned about him.

PROCEEDINGS

1          I have spoken with him a couple of times this

2     evening, and I would ask the Court to set a more reasonable

3     bail and I would point out the injuries alleged here, it

4     appears that after the complaining witness received medical

5     treatment at the hospital, the injuries alleged are really

6     misdemeanor injuries, assault three injuries.   My client

7     absolutely denies any type of strangulation.   For these

8     reasons I'm asking the Court to set a lower type of bail.

9          THE COURT:   Thank you.   Mr. Collins, while case is

10    pending you are to have no contact with Melinda owns.   No

11    contact in person, phone, e-mail, messages, cards, letters

12    Facebook, including sending messages through other people.

13    No third-party contact or you'll be re-arrested, do you

14    understand?

15          THE DEFENDANT:   Yes.

16          THE COURT:   Bail is set in the amount of $35,000

17    insurance company bail bond over $35,000 cash.

18          MS. NIX:   I would ask if you could mark the file

19    medical attention.

20          THE COURT:   I'll mark that medical attention.

          *     *     *     *     *

REPORTER'S CERTIFICATION

Certified to be a true and accurate transcript of the original
stenographic notes.

MELISSA JIMENEZ-DE ARMAS
Official Court Reporter

EXHIBIT: H

Investigator Notes from 9/25/18

I just spoke with Melinda Owen. Ms. Owen was just released from the hospital yesterday. She was physically in pain, but coherent/alert. Ms. Owen is not interested in pressing charges or participating in the prosecution of Mr. Collins. Ms. Owens is only interested in an order of protection against client. According to Ms. Owen, her roommate (Mary) was present during the time of the incident, but didn't see anything. I asked Ms. Owen where Mary was today while I was interviewing her. Ms. Owen said that Mary was asleep at the moment. The DA came to speak with Ms. Owen while she was in the hospital, but she was in so much pain and the pain medication really didn't allow her to focus. Ms. Owen couldn't recall all the details with the DA. Ms. Owen did say that the DA said he would arrange for a car to pick her up and bring her to the DA's office. I explained to Ms. Owen what a supporting deposition is and what that entails. Ms. Owen gave me client's glasses because she was worried about client not being able to see.

Ms. Owen mentioned that it was client who thinks that she is cheating and that's why client was upset. Ms. Owen said that client even confronted the guy who was accused of sleeping with Ms. Owen. I left my info with Ms. Owen in case she needs to get in touch with me. Her cell phone is off at the moment.

She claimed that she had a broken rib (it appeared the pain was coming from her left side) and a punctured lung.

EXHIBIT: I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 51
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK,                 :

          - against -                               :      <u>DECISION AND ORDER</u>

DJUAN COLLINS,                                       :      Ind. No. 3510/18

                          Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MICHAEL OBUS, J.:

Defendant's omnibus motion is decided as follows:

     1.  The motion to inspect the Grand Jury minutes is granted.  The motion to dismiss or reduce the charges for legal insufficiency of the evidence or defects in the proceedings is denied.  The Court has inspected the Grand Jury minutes and finds that they are legally sufficient to support the charges and that the proceedings were properly conducted.

     2.  The application for release of the Grand Jury minutes is denied.

     3.  The motion for discovery and a bill of particulars is granted to the extent provided by the People with leave to defendant to apply to the Court within fifteen days of the date of this decision for any additional items unreasonably withheld.  The People are reminded of their continuing duty to supply all <u>Brady</u> material.

     4.  The defense is directed to respond to the prosecutor's demand for reciprocal discovery by the next adjourn date.

<b>HEARINGS</b>

     5.  The motion to suppress evidence concerning statements is granted insofar as to order a <u>Dunaway</u>/<u>Huntley</u> hearing.

     6.  The motions to preclude identification and statement evidence for the failure to provide CPL 710.30 notice, and for a voluntariness hearing regarding any unnoticed statements, are denied as premature.

     7.  The <u>Sandoval</u> and <u>Ventimiglia</u> motions will be heard immediately before trial.

This shall constitute the decision and order of the Court.

Dated:  New York, New York
        January 3, 2019

                                                         J.S.C.

                              HON. MICHAEL J. OBUS

EXHIBIT: J

D'Juan Collins
B&C# 349-18-07053
O.B.C.C.
1600 Hazen St.
East Elmhurst, N.Y. 11370


The Legal Aid Society
Criminal Defense Office
49 Thomas St.
N.Y., N.Y. 10013

March 7, 2019

Re: Discovery Demand


Dear Ms. Yvonne Nix, Esq.

        As you are aware or should be aware, I was arrested on
September 22, 2018 and arraigned upon the felony complaint.

        I was subsequently indicted in Pt. 51 in Judge, Michael
Obus' Court.

        Pursuant to CPL §240.20 a Demand for Discovery was made;
the People are to have complied with the Discovery Demand within
15 days thereafter, unless the People refuse to comply with the
demand pursuant to CPL §240.80.

        Matters that are discoverable on demand must be turned
over without regard to whether or not the evidence is required
under the Constitution.  People v. Dagata, 88 N.Y.2d 40 (1995).

        In the event of the People's refusal, which must be in
writing and set forth the grounds thereof (CPL §240.35), the
defendant may move for a court order directing compliance
(CPL §240.40).

        Such a motion should be included in the omnibus motion
under CPL Article 255, which is normally served or filed 45 days
after arraignment (see, CPL §240.90[2]).

To this date and after numerous request from me, the principal, I have consistently, and patiently awaited the material turned over to you by the D.A. pursuant to the discovery demand (i.e., CD of the 911 sprint report, bodycam footage on DVD, Grand Jury minutes of witness, UF61, DD5, UF250 NYPD investigative reports).

Failure to turn over these materials, as well as other and all materials related to this case to me puts me at a serious disadvantage in the decision making process.

I, and I alone have to make informed decisions to go to trial or plea bargain but I can't because my agent and legal assistant has failed to inform me of such things, when it's in your legal duty to so.

If you refuse, ignore or forestall my demand for discovery related material, I accept your withdrawal from my case.

Also, please take notice, I am respectfully requesting to be kept informed on all matters appearing before the court and as such, demand a copy of the omnibus motion, answer to omnibus motion and decision & order, as well as a copy of the appearance docket from the felony arraignment to present.

If any or all of the materials sought are denied in whole or part, please state your reason for denial in writing, thank you.

Sincerely,

D'Juan Collins

cc: President, Blaine V. Fogg,
    Attorney-in-Chief,
    Steven Banks,
    Attorney-in-Charge,
    Seymour W. James, Jr.,
    Attorney-in-Charge,
    Irwin Shaw

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                         )  ss.:
COUNTY OF BRONX     )

     I, D'Juan Collins, being duly sworn, deposes and says:

     That I have on this 7th day of March, 2019, placed in a properly sealed envelope, a letter dated, March 7, 2019, Re: Discovery Demand, to be mailed via the United States Postal Service, through the institutional mailroom at Otis Bantum Correctional Center located at 1600 Hazen St., East Elmhurst, N.Y. 11370 to the following parties:

President, Blaine V. Fogg
The Legal Aid Society
Criminal Defense Office
49 Thomas St.
N.Y., N.Y. 10013

Attorney-in-Chief, Steven Banks
The Legal Aid Society
Criminal Defense Office
49 Thomas St.
N.Y., N.Y. 10013

Attorney-in-Chief,
Seymour W. James, Jr.
The Legal Aid Society
Criminal

Attorney-in-Charge,
Irwin Shaw
The Legal Aid Society
Criminal Defense Office
N.Y., N.Y. 10013

Yvonne Nix, ESQ
The Legal Aid Society
Criminal Defense Office
N.Y., N.Y. 10013

Respectfully submitted,

*D'Juan Collins*
D'Juan Collins

SWORN TO BEFORE ME THIS
7th DAY OF March, 2019

_____
NOTARY PUBLIC

ERNEST O. OMOROGRE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6152449
Qualified in Suffolk County
My Commission Expires 9/11/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 51

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>DJUAN COLLINS<br><br>Defendant. | CERTIFICATE OF READINESS<br><br>Indictment No. 03510/2018 |

Mark Murphy, an Assistant District Attorney in the County of New York, hereby

certifies that the People are ready for trial in the above-entitled action.

Dated:   New York, New York
         October 25, 2018

Respectfully submitted,

Mark Murphy
Assistant District Attorney
(212) 335-9947

EXHIBIT:K

D'Juan Collins
B&C #3491807053
O.B.C.C.
16-00 Hazen St.
East Elmhurst, N.Y. 11370


The Legal Aid Society
49 Thomas  St.
N.Y., N.Y. 10013

                                        May 16, 2019

ATTN: Yvonne Nix
                                        Ind. #03510/18


Dear Ms. Yvonne Nix, Esq.,

     How are you?  I am writing to you in hopes that this
matter will be resolved and put to rest by next court date.

     I am also inquiring into when will the District Attorney's
Office for New York County turn over the bodycam footage from
the night of September 22, 2018, as you have continuously
represented to me that they have not turned over that footage
and that you are not in possession of the bodycam footage?

     If the bodycam footage is not turned over to you by our
next court date of June 11, 19, will you request sanctions?
If you are not going to request sanctions agaainst the D.A.
for violation of the discouery procedures and possible prejudice
to defense on probable cause, please indicate your reason(s)
for not requesting sanctions for non-production.

     Also, see if this case can be settled via "time served" or
an ACD?

     Please take notice, I do not consent to anymore adjournments
on us, nor have I ever given consent to any adjournments on us
when the prosecution have stated upon the record, "we're not
ready".  I do understand that you have that authority as my
counsel of record, however, it must be for strategic purpose,
which you have failed to inform me what your strategy is.  Or do
you have a strategy for consenting to adjournments when the D.A.

have repeatedly stated, "we're not ready?"

If their was no strategy then please indicate your reason(s) for adjourning the pre-trial upon the defense instead of objecting to the adjournment or just staying mute?

As long as you keep requesting adjournments when the D.A.'s office is saying they are not ready, that time is chargeable to us, actually me because I'm the one that's actually being injured.

Please respond in kind to all matters in this letter to ensure a peaceful attorney-client relationship, thanking you in advance for your time, look forward to hearing from you soon.

Sincerely,

D'Juan Collins

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
COUNTY OF Bronx ) ss:

I, D'Juan Collins _____, being duly sworn deposes and says:

That I have on the _16th_ day of _May_, 20_19_, placed and submitted the original and copies of this letter to be duly mailed via the United States Postal Service, through the institutional mailroom of the _Otis Bantum_ Correctional Facility. Said moving papers were mailed to the following concerned parties:

District Attorney
_____County/

Supreme Court
_____County/

Yvonne Nix , Defense Counsel
The Legal Aid Society
49 Thomas St.
N.Y, NY. 10013

Yours, etc...

_D'Juan Collins_
DEFENDANT

Sworn to before me this
_16th_ day of _MAY_, 20_19_.

_____
NOTARY PUBLIC / COMMISSIONER OF DEEDS

ERNEST O. OMOROGBE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OM6152449
Qualified in Suffolk County
My Commission Expires _9/11/2022_

My Commission Expires
Qualified in Suffolk County
No. 01OM6152449
NOTARY PUBLIC-STATE OF NEW YORK
ERNEST O. OMOROGBE

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 7-13-19 | | |
| --- | --- | --- |
| Dated | | |

| D'Juan | E. | Collins |
| --- | --- | --- |
| First Name | Middle Initial | Last Name |

| 16-00 Hazen St., | | |
| --- | --- | --- |
| Prison Address | | |

| East Elmhurst | N.Y. | 11370 |
| --- | --- | --- |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:   7-13-19

Page 6

RECEIVED
SDNY PRO SE OFFICE

2019 JUL 30  AM 6: 12

S:D. OF N.Y.



Pro Se Clerk's Office
United States District Court
Southern District of New York
U.S. Courthouse
500 Pearl St.
New York, N.Y. 10007









$14.15



D'Juan Collins #349-18-07053
Otis Bantum Correctional Cent
16-00 Hazen St.
East Elmhurst, N.Y. 11370